**In re OLYMPIC NATURAL GAS COMPANY, Debtor.**

**Randy Williams, Trustee, Plaintiff,**

**Morgan Stanley Capital Group, Inc., Defendant.**

**Bankruptcy No. 97–45906–H4–7. Adversary No. 99–3280.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Jan. 30, 2001.

Richard L. Fuqua, II, Fuqua and Keim, Houston, TX, for Debtor.

Tony M. Davis, Baker & Botts, Houston, TX, for Pennunion Energy Services, L.L.C.

David M. Waterson, Jr., PG&E Gas Transmission, San Antonio, TX, for Valero Gas Marketing, L.P.

Dat Tran, Attorney at Law, Houston, TX for Norstar Energy, L.P.

David J. Askanase, Ann de Pender Zeigler, Hughes, Watters & Askanase, Houston, TX, Rhett G. Campbell, Morris & Campbell, Houston, TX, for Randy W. Williams, trustee.

Mary Millwood Gregory, Baker and Botts, Houston, TX, for Pennzoil Gas and Energy Marketing Cos.

Martha F. McDugald, D. Michael Dalton, Mayor Day, et al., Houston, TX, for Morgan Stanley Capital Group, Inc.

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WILLIAM R. GREENDYKE, Bankruptcy Judge.

On August 11, 2000, this matter came before the court on Defendant Morgan Stanley Capital Group, Inc.'s ("Morgan Stanley") motion for partial summary judgment. At the conclusion of the hearing, the Court took the matter under advisement. After allowing time for submission of post-hearing briefs and after careful consideration of the facts, the arguments, the briefs, and the applicable law, the Court concludes that the motion for partial summary judgment should be granted. In support of this conclusion, the Court makes the following findings of fact (based on facts which appear to be undisputed) and conclusions of law. To the extent a finding is more properly characterized as a conclusion, it should be

considered as such; to the extent a conclusion is more properly characterized as a finding of fact, it should be considered as such.

### FINDINGS OF FACT

Morgan Stanley engages in many financial transactions involving commodities (i.e., natural gas, crude oil, precious metals and electricity) and including both on-exchange transactions (e.g., future transactions) and off-exchange transactions (e.g., forward contract transactions). Both parties agree that Morgan Stanley *sometimes* enters into forward contract transactions purely for financial or risk shifting purposes and is not a natural gas producer or distributor.

In 1996, Morgan Stanley began entering into numerous contracts with Olympic Natural Gas Company or Olympic Gas Marketing, Inc., (hereinafter collectively referred to as "Olympic") to purchase and sell natural gas in accordance with the Natural Gas Sales and Purchase Contract entered into by Morgan Stanley with GM Hydrocarbons and later assigned to Olympic. This Contract provided that "[b]y the fifteenth (15th) day of each calendar month following a month in which gas was delivered, Seller shall provide Buyer with an invoice setting forth the quantity of Gas which was Scheduled, the Contract Price, and the total amount due from Buyer." The Buyer would then "remit the total amount due ... by the twenty-fifth (25th) day of the calendar month in which the invoice was rendered." The Contract further contained a provision regarding payments in the event that amounts were due for two or more transactions in which each Party was obligated to pay. Finally, the Contract itself stated it was a "forward contract" in the liquidation provision of the contract.

In January of 1997, Morgan Stanley entered into seven transactions for the purchase of natural gas from Olympic to be delivered to Morgan Stanley on a daily basis from February 1, 1997 through February 28, 1997. At the same time, Olympic entered into five transactions for the purchase of natural gas from Morgan Stanley to be delivered on a daily basis from February 1st through the 28th. Morgan Stanley sent Olympic an invoice for the gross amount due to it and Olympic sent Morgan Stanley an invoice for its amount due. Morgan Stanley paid the entire gross amount due for its natural gas purchases so Olympic was required to pay its entire gross amount due for its January transactions. Trustee claims that the debtors transferred to Defendant $817,919.60 on April 11, 1997 and $1,000,000 on April 15, 1997 for the January transactions.

In February of 1997, Morgan Stanley entered into four transactions to purchase natural gas from Olympic on a daily basis from March 1st through 31st. Olympic entered into five transactions to purchase natural gas from Morgan Stanley on a daily basis from March 1st through 31st. On April 29, 1997, Morgan Stanley sent an invoice to Olympic reflecting an amount owing which consisted of the difference between the gross amount owed by Morgan Stanley to Olympic and the gross amount owed by Olympic to Morgan Stanley for the February transactions. Trustee claims that the debtors transferred to Defendant $10,850 on April 29, 1997 for the February transactions.

In March of 1997, Morgan Stanley entered into four transactions to purchase natural gas from Olympic on a daily basis from April 1st through 30th. Olympic entered into three transactions to purchase natural gas from Morgan Stanley on a daily basis from April 1st through 30th. On May 5, 1997, Morgan Stanley sent an invoice to Olympic reflecting an amount owing which consisted of the difference between the gross amount owed by Morgan Stanley to Olympic and the gross amount owed by Olympic to Morgan Stanley for the March natural gas purchases. Trustee claims that the debtors trans-

ferred to Defendant $48,000 on May 22, 1997 for the March transactions.

On June 6, 1997, an involuntary Chapter 7 petition was filed against Olympic Natural Gas Company, and on June 13, 1997, Olympic Gas Marketing, Inc. filed a voluntary Chapter 11 petition. On August 12, 1997, the Court entered an order granting a Motion to Convert Case filed by Olympic Gas Marketing, Inc. from Chapter 11 to Chapter 7, and Randy Williams was appointed Chapter 7 Trustee. On July 2, 1999, the Chapter 7 Trustee filed a complaint against Morgan Stanley for avoidance of the payments made by Olympic to Morgan Stanley for January, February and March transactions described above. The Chapter 7 Trustee seeks recovery of preferential and/or fraudulent transfers pursuant to 11 U.S.C. §§ 547, 548 and 550. All of the monetary transfers to Defendant discussed above were made within ninety days prior to the involuntary bankruptcy petition filed by Debtors' creditors.

### CONCLUSIONS OF LAW

Summary judgment is appropriate when no issue of material fact remains and the moving party is entitled to judgment as a matter of law. FED. R. BANKR. P. 7056 and FED. R. CIV. P. 56(c). In the controversy at issue, the factual and legal components to granting summary judgment under the 11 U.S.C. § 546(e) exception stem from whether Defendant Morgan Stanley is considered a "forward contract merchant" and whether the contested transactions involved "settlement payments."

11 U.S.C. § 546(e) provides that "[n]otwithstanding sections 544, 545, 547, 548(a)(1)(B) and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to a commodity broker, forward contract merchant, stockbroker, financial institution, or securities clearing agency, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title."

■ Morgan Stanley correctly states that pursuant to 11 U.S.C. § 546(e), a trustee cannot avoid "settlement payments" made to a "forward contract merchant." Thus, the Court must first determine whether Morgan Stanley is a "forward contract merchant." 11 U.S.C. § 101(26) defines a forward contract merchant as "a person whose business consists in whole or in part of entering into forward contracts as or with merchants in a commodity, . . ., or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade." The Trustee admits in its reply brief that Morgan Stanley's business "consists in part of entering into forward contracts." 11 U.S.C. § 101(25) defines a forward contract as "a contract (other than a commodity contract) for the purchase, sale, or transfer of a commodity, . . ., or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade, or product or byproduct thereof, with a future maturity date more than two days after the date the contract is entered into . . . ."

Morgan Stanley does not produce or distribute natural gas. When interpreting the definition of "forward contract," 11 U.S.C. § 101(25) contemplates the physical purchase, sale or delivery of a commodity or similar good. The Chapter 7 Trustee relies on a Canadian court case, *In the Matter of Blue Range Res. Corp.*,[1] which made the "financial versus physical distinction" regarding natural gas supply contracts. However, the Court of Appeal of Alberta disagreed with this distinction finding that privately negotiated contracts to purchase and sell a specified quantity of gas at some certain or determinable future

---

1. In the Matter of Blue Range Res. Corp., [1999] Carswell Alta 809 Alta. Q.B. [Westlaw].

The opinion was issued by a Queen's Bench Judge LoVecchio in Alberta, Canada.

date is indeed a forward contract even though there is included within the contract some physical delivery obligations. *See Enron Capital & Trade Resources Canada Corp. v. Blue Range Res. Corp.*, [2000] ABCA. 239, —— Alta L.R.(3d) —— (C.A.). The Court of Appeal of Alberta opinion also provides that every contract for the purchase and sale of natural gas is not necessarily a forward commodity contract. *See id.* For example, contracts "which do not usually commit a consumer to purchase a specified volume of gas for a specified price" would not be forward contracts. *Id.*

The Court sees no reason why these provisions should not be read as broadly as Congress intended for them to be read. This Court finds that the transactions at issue were contracts for the purchase and sale of a certain, specified quantity of natural gas to be delivered at some certain, specified future date. Forward contracts provide the ability to buy or sell commodities in the market on a forward basis. The transactions at issue are indeed forward contracts. The Contract terms within the liquidation provision of the Contract refer to the Contract as a "forward contract." Furthermore, the Trustee admits that part of Morgan Stanley's business consists of entering into forward contracts. Morgan Stanley's business consists in whole *or in part* of entering into forward contracts. Thus, Morgan Stanley falls within the definition of forward contract merchant.

 The second question that the Court must entertain is whether the payments made between Olympic and Morgan Stanley were "settlement payments." The Court must first consider the plain meaning of the statute. Two different provisions in the Bankruptcy Code define settlement payment for purposes of 11 U.S.C. § 546(e)—sections 741(8) and 101(51A). Both definitions are similar, but § 101(51A) limits its definition to the types of payments commonly used in the forward contracts trade. Although the Fifth Circuit Court of Appeals has not yet entertained this issue, Courts in other Circuits have consistently construed the term "settlement payment" broadly.[2] The Court will consider both of these definitions.

11 U.S.C. § 741(8) defines settlement payment as "for purposes of the forward contract provisions of this title, a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, a net settlement payment, or any other similar payment commonly used in the securities trade." Courts using the broad interpretation of the term "settlement payments" have construed the term in the context of avoidance of transactions in the public market as opposed to avoidance of a private transaction. Courts within the Fifth Circuit read the statute in the context that " § 546(e) [should] not be applied to reach private transactions [for] which Congress did not express a policy reason to shield from the otherwise applicable avoidance provisions of Chapter 5. To hold otherwise would be inconsistent with the statutory scheme." *Jewel Recovery, L.P. v. Gordon*, 196 B.R. 348, 353 (N.D.Tex.1996).

It appears that Congress intended 11 U.S.C. § 546(e) to protect the securities trading system. As one court explained:

> The securities industry utilizes a "clearance and settlement" system, wherein parties use intermediaries to make trades of public stock which are instantaneously credited, but in which the actual exchange of stock and consideration thereof takes place at a later date. This later date is known as the "settlement" date; on this date the trade is "settled" by actually exchanging what was promised on the trade date. The intermediaries' role in this' system is critical....

**2.** *See, e.g., Bevill, Bresler & Schulman v. Spencer Sav. & Loan*, 878 F.2d 742, 745 (3rd Cir.1989); *In re Kaiser Steel Corp.*, 952 F.2d 1230, 1239 (10th Cir.1991); *In re Comark*, 971 F.2d 322, 324 (9th Cir.1992).

mak[ing] entries (credits or debits) in the accounts of its members (financial institutions or brokers), which reflect the trade. Thus, while settlement occurs later, the trade itself is functionally instantaneous. If the pre-bankruptcy trades by a bankrupt intermediary could be set aside, then the guarantees that allow the system to function would be threatened, the parties could not proceed with confidence, and a bankruptcy by one party in the chain could spread to other parties in the chain, threatening a collapse of the entire industry. *Zahn v. Yucaipa Capital Fund,* 218 B.R. 656, 675–76 (D.R.I.1998) (citations omitted).

The type of payments made in the transactions at issue are clearly not the type of settlement payments in the securities industry that Congress intended to protect from the Trustee's avoidance powers with the definition provided by § 741(8). These transactions were private transactions and do not implicate the securities settlement process. No intermediaries or clearing agencies were involved and there was no link between these transactions and the securities industry. The payments were for natural gas actually purchased. Allowing avoidance of these transactions would have no impact on the securities system.

However, the Court must also entertain the definition provided in 11 U.S.C. § 101(51A). 11 U.S.C. § 101(51A) defines settlement payment as "for purposes of the forward contract provisions of this title, a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, *a net settlement payment,* or any other similar payment commonly used in the forward contracts trade." (emphasis added)

The Court has already found that Morgan Stanley is a forward contract merchant. The payments at issue were made for the amount owing for the natural gas purchased by each of the Parties. Morgan Stanley sold gas to Olympic. Olympic sold gas to Morgan Stanley. A series of trans-

actions occurred. Taking into account both Parties' debts to each other, payments were then made to the Party with the net account receivable. Under the plain reading of § 101(51A), this payment can be characterized as "a *similar payment commonly used in the forward contracts trade.*" Thus, the payments can be characterized as a "settlement payment" pursuant to the definition contained in 11 U.S.C. § 101(51)(A).

Pursuant to 11 U.S.C. § 546(e), the Trustee may not avoid settlement payments made by or to a forward contract merchant that is made before the commencement of the case. The Court finds Morgan Stanley is indeed a "forward contract merchant" based on the definition provided in 11 U.S.C. § 101(26). The Chapter 7 Trustee admits that part of Morgan Stanley's business involves entering into "forward contracts" as required by the definition of "forward contract merchant." Further, the Court concludes the payments made between Olympic and Morgan Stanley were "settlement payments" as defined by 11 U.S.C. § 101(51A). Because the elements set forth by 11 U.S.C. § 546(e) have been met, the Court finds the payments made by Olympic to Morgan Stanley may not be avoided by the Trustee.

Based on the facts, the briefs, the arguments, and applicable law, the Court finds that Defendant Morgan Stanley is entitled to judgment as a matter of law. Accordingly, the Court grants the motion for partial summary judgment in favor of Morgan Stanley and against the Trustee. A separate form of order reflecting this ruling shall be entered.